Case number 25-5320. Make The Road New York et al versus Kristi Noem, Secretary of the U.S. Department of Homeland Security, in her official capacity et al, at balance. Mr. Ensign, for the balance. Mr. Ballad-Britzman, for the appellate. Morning. Good morning. May it please the Court, Drew Ensign, Deputy Assistant Attorney General for the United States. I'd like to reserve three minutes for rebuttal. The universal relief issued below defies binding precedent multiple times over and should be reversed. For more than 130 years since the Nishimura decision and recently reiterated by the Supreme Court in Thursday in 2020, it's been well established that aliens who have not been lawfully admitted into the country are only entitled to whatever processes the political branches provide and cannot rely on the Due Process Clause to impose additional procedural requirements. As this Court again explained in Thursday, quote, the due process rights of aliens seeking initial entry are simply whatever processes, whatever the procedures authorized by Congress, end quote. That applies even to aliens who lawfully presented themselves at ports of entry and were paroled into the interior for years pending removal who are nonetheless, quote, treated for due process purposes as if stopped at the border, end quote. And the Supreme Court has further reiterated that an alien who tries to enter the country illegally is treated as an applicant for admission, end quote, which necessarily means that the Due Process Clause cannot be relied upon to impose additional procedural requirements beyond those provided by statute. The jurisdictions thus squarely controls this case. But the District Court essentially attempted to evade that binding precedent by limiting it to its facts, essentially holding that it had no application beyond 25 yards of the border and a short period of time there after crossing. But that completely ignores and indeed defies Thursigium's reiteration of the entry fiction rule, which applies to aliens who have been present in the interior of the United States even for years. I mean, Thursigium itself makes a distinction. It says that and it cites cases that treat entry as different than people who have established domicile in the country, right? I don't believe so, Your Honor. I acknowledge that it does cite to the Landon case, but I think the Landon case does not draw that line. In fact, I think it draws the line in a way that's very instructive and controlling here. What the Supreme Court said in Landon is, this court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, dot, dot, dot. Once an alien gains admission to the country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly. So if you have a lawful admission into the country, that status change can occur and you can potentially rely on the due process clause to impose additional procedural requirements. But for those aliens who unlawfully entered this country and have never lawfully been admitted, they cannot rely on the due process clause. And indeed, even if they have been lawfully paroled into the United States, but not admitted, they still can't rely on it. What about Zadvidus v. Davis? What's that? What about Zadvidus v. Davis, where the court says, once an alien enters the country, the legal circumstance changes, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent? Sure. Zadvidus addressed a different question. That wasn't invoking the due process clause to resist removal from the United States. That was invoking the due process clause to resist potentially indefinite detention pending removal. Detention raises a fundamentally different question than... You still have to determine whether due process applies. It certainly does apply. But the rule of thursigium and going all the way back to Nishimura is the due process clause requires only those procedures that have been authorized by Congress and nothing further. Until you've been lawfully admitted into the United States, whatever the procedures provided by Congress are the procedures that are due under the due process clause and nothing further. And so in the Supreme Court and thursigium, I think, cites notably to the Nishimura case, to the Kaplan case, to the Maziah case, and reiterates that rule for all of them. I think that is the controlling rule of decision here. And it's not merely that thursigium itself was 25 yards to the border. It's a rule that was far, far broader. I think the Kaplan case is very instructive on that. Even if we accept your portrayal of how the due process clause works, under that, you're saying that there is at least due process rights that these people have with to whatever Congress has specified, right? That's your framing? That's correct, Your Honor. So under that framing, then even if it's the Mullane test as opposed to the Matthews v. Eldridge due process balancing test, there still has to be adequate notice. And there's cases under Mullane, language from Mullane itself, but then there's cases like, I'm forgetting, Memphis Light, Gas, and Water Division, the Supreme Court case from 84, I believe. And then there's lots of cases from, or 78, is Memphis Light, Gas, and Water. And then there's lots of cases from our circuit that talks about even under Mullane, the notice has to be sufficient, has to inform you at least of what the procedures are or what you're facing. In Mullane, it was someone whose electric bill was unpaid and their lights were about to be turned off, and the Supreme Court said that the notice was insufficient because it didn't provide information on how to contest your bill. The bill might have been wrong. And that was insufficient. So here the district court found that one of the insufficiencies of the notice is that people don't even know and aren't informed that if they've been here over two years, this expedited removal doesn't even apply to them. So even under your construct of the due process clause works, why isn't that a violation of Mullane? A couple of things, Your Honor. We disagree with the premise, but even if it applied, I also think it would not require the outcome the district court reached. But it's the premise itself. The inquiry of either Mullane or Matthews is an attempt to rely on the due process clause to impose additional procedural requirements beyond those already required by statute. That's very nature of either the Mullane or the Matthews inquiry. So under the rule of Nishimura and Thursigian, you never get to that inquiry because the procedures that are required are simply those required by statute, nothing further. The entire point of the Mullane or the Matthews test is to potentially require additional procedures. And that's not what Mullane does. Mullane is all about notice. It's not about what procedures you're required. It's about notice. And what we've said in FERC cases and in FDA cases and in all other sorts of cases, that if an agency is going to take some reaction, the agency at least has to provide you notice of what the basis is for the action. I guess a couple of responses to that. One is that we believe that notice are part of the procedures. But even if you thought it wasn't strictly a procedure, it's pretty clear that the rule of Thursigian is the entire scope of rights that can be claimed under the due process clause is only those provided by statute and nothing further. So I don't think that that can be separated out from procedures in any event that the rule would encompass it. Does the government agree that these immigrants have some interest in not being unlawfully removed? They have some interest, but that is... I mean, under JGG and AARP from the Supreme Court state decisions, do they have some liberty? I mean, they don't have a liberty just to remain because they're here unlawfully. Do they have some interest in not being unlawfully removed? They have some interest that can only generate those rights that Congress has provided, that under the rule of Thursigian and Nishimura, while there might be an interest... Do they have that statutory right, do you think, under IRERA? No, I don't think so. A right cannot be unlawfully removed or not unlawfully be subject to expedited procedures? They don't have a right to any additional procedures beyond those that are required by the statute, and that was the entire basis of the district court's decision. So we think that reversal is required here because the reliance on the due process clause to impose additional procedure requirements beyond those that Congress provided necessarily violates Thursigian and Nishimura. So the government's position is that if notice were to be required, it would have to be explicitly set forth in statute? If Congress had provided for such notice, that would be an enforceable right that the would possess. But Congress, there is not an allegation that's required as a matter of statute, only that it's required as a matter of the Constitution, wholly aside from what the statute provides. So what are we to make of the significance of the Supreme Court's language in AARP v. Trump and Trump v. JGG, where the court says, well, the process is one thing, but there has to be at least notice in time for you to be able to avail yourself of the process? So I think AARP is addressing a different context that doesn't apply here for at least different reasons. First of all, it is addressing a different question, fundamentally. It's not addressing removal under Title VIII, which is a context that has a very robust line of precedence running 130 years of its controlling here. Instead, it addresses the Alien Enemies Act, which is a much more narrow context that addresses different things and different concerns. In particular, second, it addresses a fundamentally different inquiry. It's not saying the government is saying you're removable because you're an alien and don't have a right to remain in the United States. It's the United States fundamentally bringing allegations of fault. They're saying in that context, it's we are alleging that you are a member of a foreign terrorist organization that is waging a predatory incursion or invasion of the United States. That is a fundamentally different inquiry. When the government brings allegations of fault against a person and seeks to deprive them of their liberty on that basis, that's a very different constitutional inquiry than what is presented here. Let me ask you, why this ICE guidance document from February that was just published in October, why was this not part of the litigation from the outset? Why is this not information that the government provided to the district court? Because now we have a decision from the district court saying these procedures don't comply with due process. But it was based arguably on an incomplete picture of what procedures were being used by the government. So I'm just, I'm not sure I understand why this is being presented to us now. Wasn't presented to the district court, wasn't presented at the state decision. And I think that has, this guidance has implications both for the time bar issue, and I think it has implications for what is happening in terms of due process. So several reactions, which may only be partially satisfying. But let me kind of go through how we got here, because I think that bears on why the record is. It's important because, you know, we can take judicial notice or not in large measure as a certain, you know, as a matter of discretion. So I think it is relevant. We certainly think it's relevant to the issues presented, although I think you would never get there. So first, let me explain why I think you would never get there. But then also why it's properly presented, if you believe that the court's inquiry would reach that. The fundamental issue about continuous presence, we believe, is one that's not a case of controversy presented here. Because there is no evidence in the record whatsoever that this has ever affected or injured an actual person. There is no allegation that anyone has said that I wasn't provided notice that I had, you know, the burden was on me to show that I've been continually present in the United States for more than two years. And as a result, I was not able to make that showing. That, unless someone can come forward with allegations of that sort, there is no Article III standing. And hence, that's not presented. And so I say that when there's declarations in the record from members of Make the Road who say that, essentially, they were detained. They weren't really told why. And, essentially, they're given some notice at the same time that they're told you have to leave the country and they weren't. Nothing was explained to them about continuous presence in two years. I think it was a declaration from somebody, I think, Mary.   There are two dos. So two responses to that. First of all, we think it is not presented because those two individuals are main plaintiffs and expressly disavowed seeking relief. And I think the court has to take them at their word that when they expressly disavow seeking relief, that expressing disavowal, you know, does not satisfy plaintiff's standing inquiry. But even if you thought it was before you, and then, Judge Rowe, I very much do want to answer your question. Those declarations always say I was wrongfully removed. They never say what notice they were provided. And they certainly don't say, as a result of this notice not being given to me, that's the reason I was wrongfully removed. That's what you would need to do in order to connect the alleged constitutional defect to any actual inquiry. And there's simply no attempt to connect that. So, Judge Rowe, I set that up because I think it's important as to why the record is undeveloped. Plaintiffs have never, this is effectively a phantom problem that it never appears to have affected any individual ever. And that's why the record... I understand that's the government's position, but the plaintiffs here have made a facial challenge to whatever procedures are being used for expedited removal for the expanded designation. And so, I understand it's the government's position that maybe they don't have standing, that this is hard for, you know, any number of reasons. But in the district court and in the stay motion, there's still a whole discussion about whether the procedures were adequate. And we didn't know what the procedures were. I just don't... Do you have anything to say about why the government didn't share that at some earlier stage of the litigation? I think it is precisely because it appeared that it affected no one and the record was undeveloped on that. And to the extent the record is undeveloped because it has affected no one, I think the right outcome here is to dismiss or a rejection of those claims. We did eventually show it to us. So, if it's completely irrelevant, why did you even show it to us? Well, it is certainly to the extent that there is no Article III jurisdiction is irrelevant. Obviously, we recognize the possibility that you might disagree with us. And therefore, we presented it in that context. Then why didn't that logic lead you to present it before then? I'm not exactly sure, Your Honor. Certainly, briefing was conducted in a very accelerated manner in the district court. Although plaintiffs filed in March, they didn't file their Section 705 relief for some time. And it was a very accelerated briefing schedule that the government was put under. And so, I think that's part of the reason. In any event, we do think it's properly the subject of judicial notice, as well as to answer, I believe, the question Judge Routt may have presented or at least alluded to. The 60-day statute of limitations here is jurisdictional in nature. And it's, of course, plaintiff's burden to establish the jurisdiction exists. So, I mean, this guidance wasn't published, wasn't made publicly available until October. And so, does that mean that maybe the time bar resets? I mean, if they're challenging those procedures, then I'm not sure how the time bar would apply. I think it's interesting the government didn't really press the time bar issue at the state motion. I mean, I think that's, I mean, it's jurisdictional, so we have to think about it in any event. And so, I'm just, there seems something a little shifty about the fact that this guidance wasn't provided. We had an affidavit setting out some of the procedures that the government was using, but not the guidance itself. You know, I, perhaps you don't have anything else to say about it. And it seems that the time bar may well be off the table, given that there are new procedures that were written that ICE is implementing with respect to the designation. It doesn't mean that there aren't other threshold issues, but perhaps the time bar issue is off the table. I guess a couple of responses to that, Your Honor. First of all, I don't think that the procedures were, in many ways, public. The 2019 guidance was part of the public record in the first Make the Road case. There is not any, points have never identified any material changes between the 2019 and the 2025 guidance. And indeed, the stay opinion at 58 explains that, quote, the expansion order provides no added procedures beyond those already in place, end quote. There's effectively no change in the relevant procedures. And in order for plaintiffs to satisfy their burden to establish jurisdiction under the jurisdictional time bar, they would need to establish that there was some change in procedures in the prior 60 days that caused them injury. And there's no allegation at all that the 2025 procedures change from the 2019 procedures, which were very much public, in any material way that would cause them injury, and thus would, you know, put them within the jurisdictional time bar here. Did the government argue specifically that they were using the same procedures as in 2019? We certainly argued the 60-day time bar below. I believe we did that. I'm not sure exactly. Did they say we're doing the same procedures as 2019? I believe we did. I'm 90 percent confident of that. I'm certainly, we can certainly find that site and provide it to the court by 20HA if that, if the court would like us to do so. Can you talk about the plaintiff's argument that that guidance to ICE does not apply to CBP? I know in your reply brief, got it here, you say, you know, ICE is primarily responsible for processing expedited removal for aliens encountered in the interior. But it is, I think, the case that at least some of the times CBP is doing the work. So can you give us any assurance that the guidance in the February 2025 ICE guidance is being followed by CBP? Your Honor, I believe that, that's my understanding. But let me confirm with my client that that's the case. We can inform the court about that. My understanding is certainly that nothing has changed. And certainly, I don't think the relevant thing that plaintiffs have found fault with, the lack of notice, as to, is any different. But I believe probably the more relevant procedures is being given an opportunity to provide those documents if you claim to have them. Let me take that back and try to nail that down. I'd be grateful for that clarification. I also, on the topic of notice, I'm one, it's not clear to me from the record, maybe it should be, whether an alien in the situation relevant here is told you are being expeditiously removed, you're being subjected to expedited removal procedures. Are they told that? They're certainly told that they're being subject to removal procedures. As to the specific notice, I would have to look at the form. I don't know if it uses expedited or provides the statutory site. I believe so. Even if it didn't, I don't believe, for purposes of a plaintiff's relevant claim, that would matter. The durational presence requirement is best understood as an affirmative defense, and as the Second Circuit has recognized in the medical case. So, I mean, I would just put my cards on the table a little bit here. I think I'm likely with you that you don't have to tell them all of their affirmative defenses. You probably don't have to tell them, hey, you can get out of this expedited removal procedure if you show us you've been here for longer than two years. But I think it's a little different to not even tell them that they are being subjected to the expedited removal procedures. It's sort of like you don't have a duty to tell a murder defendant that they have an affirmative defense if the crime was committed, if the killing was committed in self-defense. But you do have to tell them that they're being charged with murder. If they don't even know they're being charged with murder, how would they know to assert the affirmative defense that the killing was in self-defense? Understood, Your Honor. They are provided the form. It is in the record. I apologize. My reading of the form is that it does have the statutory provision for expedited removal. I think it's a lot to expect the immigrant in that situation to have memorized the U.S. Code and know exactly what that provision. I'm not even sure it's the U.S. Code. It may even be an INA statutory provision that's given. So, and I think, help me out here if I'm wrong, they don't have access to Google to look it up. They don't have access to an attorney to tell them what the statutory code. Is there any way that if all they have is the statutory code that they could know that they're being subjected to expedited removal? Certainly, I know they're given an opportunity to talk to outside parties if they claim that they have, you know, they could provide relevant documentation. The guidance does say that. As to what, yes. They could talk to an outside party if they say, I've been here longer than two years. That's what you're saying, right? Yes, Your Honor. They wouldn't even know to say, I've been here longer than two years, if they don't know they're being subjected to expedited removal. Certainly, they know from the notice what, you know, the statutory provision they're being subjected to. I don't expect them to have memorized every statutory provision in the INA. Perhaps not, Your Honor. Certainly, the United States requires citizens and all people here to, they're charged with knowledge of an astounding amount of conduct that Congress may have criminalized in Title 18 that might not be realistic to expect that they know every single provision that they might run afoul of and due process nonetheless does not, you know, find that infirm. So, they may be subject to that. I try to say, to the extent that that's a deficiency, the court thinks is of constitutional relevance. Relief should be narrowly tailored to that particular deficiency, not the blanket universal and maximalist relief ordered by the district court. When you say universalist and maximalist relief, I'm trying to understand, I mean, the order, the order is two sentences. The first sentence is that motion for a stay of agency action is granted, essentially, and then the second sentence is that the effective dates of implementation and enforcement of the January 21 designation notice and the January 23rd Huffman memorandum, insofar as it implements the January 21st designation notice, are immediately postponed and stayed. So, that is what you are shooting at, right? Not just that, Your Honor. It's also an opinion that explicitly refuses to conduct any tailoring inquiry and instead insists on the maximum possible relief that the court could issue, which I don't think is, you know, disputably universal in its scope. And we think that's problematic for three separate reasons. First, it violates Section 1252F1, which explicitly bars relief to non-named plaintiffs in this context. And so, that itself is a dispositive bar here. Second, it violates traditional equitable principles, which apply to Section 707, as the Ninth Circuit has correctly recognized in the Immigration Defenders case. And it also flows from the text of Section 705, which incorporates traditional equitable principles by referring to preventing irreparable harm and preserving the status quo. And third of all, it violates Salerno by granting facial relief without satisfying the no set of circumstances standard. And plaintiffs do appear to agree that the Salerno inquiry, that Salerno would otherwise apply. They simply believe that Section 1252 somehow creates a never-before-seen statutory exception to Salerno that I don't think they've cited a single case for the proposition that, like, Congress has ever created such an exception, let alone does so here in a provision whose manifest intent is to restrict the scope of judicial relief rather than extend relief. I mean, tell me what you think 8 U.S.C. 1252E3 means when it says that a person can bring a challenge to the validity of the system. What do you think subparagraph A of that means? What challenge can be brought? So to the extent that you want to bring a facial challenge, that provision limits judicial review profoundly in ways that the ordinary rules would otherwise permit. Ordinarily under the APA, you could bring a suit within six years of a claim accruing, and you could do so in any district court in the country. 1252E3 restricts that very substantially. It says you can only bring it in DDC. You can only bring it within 60 days. That restriction is jurisdictional and does not renew under, like, corner post every six years as it might otherwise. We were under standard APA rules. So the manifest intent of Congress in 1252E3. I'm not asking you about the deadline, the 60 days, or whether it can be brought in DDC. I'm specifically asking you about A. What does A mean? What A means is that if you have a facial challenge, you have to bring it in these much narrowed ways that Congress has explicitly provided. It's not saying that facial relief is, you know, we're dispensing with all the usual rules for facial relief, you know, go wild. What it's saying is these challenges that otherwise could be brought much more broadly up to six years anywhere in the country, instead, to the extent that you're going to bring them at all, you have to bring them in these very narrow confines. Let me try again. The text says judicial review of determinations under Section 1225B of this title and its implementation is available in an action instituted in U.S. District Court for the District of Columbia, but shall be limited to determinations of permanent one, whether such section or regulation issued to implement such section is constitutional. Let's stop there. So, what claim can be brought based on that text, in your view? In my view, the programmatic challenges that could be brought under ordinary principles of law are restricted under the scope of that provision. So, that defines, if you have something that fits within the scope of that, the rest of the provision defines the much more limited ways in which you can bring in such claims, and that is what that provision does. So, can... That state didn't quite follow. Go ahead. I don't follow at all. So, a plaintiff, pursuant to that section, can bring a claim seeking a stay of the implementation of a regulation or policy. Do you agree with that, if under the grounds that it violates the Constitution? I agree that I could. I guess my disagreement here, and I may not be articulating it well enough, is we don't read this provision as a specific authorization of judicial review. We view it as a channeling provision that says when you have one of these claims that you might have otherwise, and I think, you know, they are attempting to bring this under other causes of action, under other laws. I don't think they are specifically saying that this is their cause of action, that what Congress has done... They say in their complaint. This is in the heading of the complaint. They list this as part of the grounds for the cause of action. I mean, they list 1252E3 and the APA, and 13, and then as a basis of jurisdiction, you know, they list this statute in 1331. I mean, there are some statutes that create a cause of action. There are some statutes that confer subject matter jurisdiction on a particular court. There are some statutes that do both simultaneously. They say this is your cause of action, and we are conferring jurisdiction. Why isn't this one of those statutes? Your Honor, I think that they have not attempted to bring it under the APA. They could not do so under the make-the-road decision. The language that provides that the scope of expedited relief is in the sole and unreviewable discretion of the Secretary means that that sole and unreviewable discretion precludes an APA cause of action. We think that, as a result, they are bringing it under... So you can have an APA cause of action under... that says that what the agency does is unconstitutional. I mean, 706 says that that's one of the grounds for scope of review, right? It says that that's one of the grounds for the scope of relief. I don't think that's the cause of action. And I think Justice Section 06 recognizes, essentially provides a standard review. We wouldn't think that that provides a cause of action. And we also don't think that 1252... So contrary to law, cause of action doesn't include contrary to the Constitution? That's what you're saying? But I think that provides a standard review for an otherwise cause of... for an otherwise applicable cause of action. But your cause of action is very likely to be either Section 702 of the APA. It may be something that best review directly in this court, for example, orders coming out of the FCC. Or it could be an implied cause of action at equity. If it's a constitutional claim of this sort that has to be brought outside the APA because the APA does not provide a cause of action here, I think it would be implied cause of action at equity. I want to make sure I understand your position. So you're saying that there is no cause of action under the APA for agency action that violates the Constitution? Not in a general matter, Your Honor. But here, this court has recognized in the... Yes or no, one can have an APA claim that makes an allegation that an agency action violates the Constitution? Not always. Is the answer. The APA often will provide you a cause of action, but sometimes it might be precluded. And it might be precluded, for example, because Congress has otherwise denied an APA cause of action as it has here in the make the... as recognized in the make the road decision, make the road one decision. And so as a general matter, you would likely have an APA cause of action, but there might be circumstances where... What does... What work does 1252E3 do? You're saying it doesn't create a cause of action. It doesn't confer jurisdiction. What is it? It is a channeling provision that greatly restricts the availability of judicial review. Otherwise, judicial review would be available in any court, in any federal district court in the country and would be available for up to six years. Congress in that provision has greatly restricted it. And that does quite a bit of work. It says that, you know, of all the federal district courts in the country, you know, all but one of them are no longer available to you. It says that, you know, you do not have your ordinary 60 years. You have only 60 days. You do not have a ordinary statute of limitations that's waivable. You have one that's jurisdictional. That does quite a bit of work, we think. So it becomes jurisdictional because of 1252E3, 60 days becomes jurisdictional, yet the statute doesn't confer jurisdiction. So how is it a one-way ratchet? Explain that. It's not a one-way ratchet. It's a restriction on the jurisdiction of the court because it speaks to the authority of the court to order a remedy. That, you know, 1252F1 also restricts the court in terms of what remedies it can order, but no one thinks that 1252F1 is a conferral of jurisdictional to bring a different cause of action. It simply restricts, you know, the relief that a court can order under an otherwise valid cause of action. Ms. Jensenstein, in Make the Road One, this court held that designation decisions are committed to agency discretion by law, based on my re-reads. But there is a footnote that says we don't decide something to the extent, we don't decide whether a constitutional claim could be available under the APA or otherwise. So can you have an issue, can you have a matter that is committed to agency discretion by law, but reviewable under the APA as a constitutional claim? We don't believe so, Your Honor. It's generally recognized that, so there is a debate whether or not committed to agency discretion is a jurisdictional bar. And there's a, I believe, long festering circuit split on the issue. But at a bare minimum, when Congress goes to the trouble of committing something to the agency discretion, that means that the APA cause of action, which, you know, speaks to essentially administrative discretion, is not available. That doesn't mean that you wouldn't necessarily be able to separately rely on, say, an implied cause of action at equity, as, like, this court has recognized. So the district court here explicitly said it was not deciding an APA claim, presumably to avoid Make the Road One. So, I mean, do we have to understand what the district court did here as an equitable constitutional claim, as treating the due process claim as an equitable constitutional claim? I believe so. I mean, I think by process of elimination... What else could it be? Exactly, Your Honor. By process of elimination, I think that's what it has to be. In which case, the APA doesn't apply to equitable constitutional claims. I don't believe that there's case law specifically on that point. There are some instances where this court has imported the Section 706 inquiry without specifically an APA cause of action. We don't think that that would be reviewable here, but I'll acknowledge I don't think that there's any case law specifically controlling on that point. There are cases where we have used 706 without an APA cause of action? Yes, Your Honor. Say, for example, Congress has vested review of an order issued by the FCC. You have to file a petition for review in this court in 30 or 60 days. It may not specifically provide what the standard of review for that is, for that review of that agency action. This court would then look to Section 706 and say, like, that's where it gets the arbitrary and capricious standard for reviewing that, you know, claim that's raised to you by a petition for review. That's very different, though, than importing an APA remedy, or is it different? We think it's different, and we think it certainly, you know, could be preclusive here as well. Going back to 1252E3A, I'm going to use a lot of ellipses here, but basically reads judicial review is available for determinations of whether covered regulation is constitutional. And what is the remedy when that happens? What do you think the remedy should be when that happens? So we're expressly in the realm of interim remedies because there isn't a final judgment. So I think that's important here. And so it potentially could be a preliminary injunction, although there are severe problems with that, and that's why plaintiffs did not even elect to request that, or a Section 705 stay. But as to Section 705, we think it incorporates traditional equitable principles. We think that follows from the text of 705. We think it also follows from the fact that federal courts universally use the winter preliminary injunction standard to determine whether or not a Section 705 stay should be entered. And because equitable principles apply, the rule of CASA and the usual rules limiting the scope of equitable relief and precluding universal relief also apply in this context. And so even if you didn't have 1252-F1, which we think is a dispositive bar here, ordinary traditional principles of equity apply to Section 705 and would limit the scope of the relief that could be issued by the district court and then the interim posture. What about the final judgment remedy? So we think that applies to that as well, but we will acknowledge that that is a different and perhaps harder inquiry for the government, whereas Section 705 says that you may issue relief. Section 706 admittedly says you shall set aside. This court long ago crossed the bridge of saying shall set aside does not mean a mandate. It's, in fact, permissive and has also applied equitable principles to that, but it does not. The it's remand without vacator standard is a bit different. It's applying equitable principles, but it's applying a different it's certainly applying a different standard. I think I understand. I think that you're saying the final relief for someone seeking judicial review of whether a covered regulation is constitutional. Could be back of the covered regulation. Is that right? Yes, Your Honor. Maybe I should put it this way. We think PASA also applies to Section 706, but we'll acknowledge that's a harder question than whether or not it applies to 705 and whether or not you think it applies to 706 at all. We still think it absolutely applies to Section 05, and those questions are distinct. Okay, so if we're in a situation where a meritorious claim is going to lead to back there, I'm not saying we're there now, but if we were in America where the final relief would be back at her. Then the interim relief would be a stay, right? So we don't think that the Section 705 is just a preliminary vacator and the way that federal courts have universally treated it is applying the preliminary injunction factors. They're not applying the Section 706 vacator standard and just replacing actual success on the merits with likely success on the merits. They're instead applying the preliminary injunction standard of winter, and we think that's the correct inquiry for 705. You seem to be, like, digressing a little bit into what the standards would be. I'm just trying to figure out what the relief itself would be if it was going to be awarded. In a case where the final relief is going to be back at her because a covered regulation is unconstitutional, the interim relief would at least sometimes be a stay of the covered regulation. Is that correct? Uh, it's correct that there could be a stay, but we think that stay is governed by CASA and traditional equitable principles. Okay, so there could be a stay, but you're saying it wouldn't be, you know, it would not provide universal relief. It might only provide relief to a named plaintiff. Right. Okay, and then that leads to, I thought that's where we were going to end up, and that's clarifying for me, make sure we're on the same page so far. I think the government's position, as it was in the previous administration, is that universal vacater is just as problematic as a universal injunction, but assuming that's wrong, as I think most of the Supreme Court thinks it's wrong, then wouldn't universal vacater be appropriate relief for an unconstitutional covered regulation, and wouldn't a universal stay be the appropriate preliminary relief leading up to that universal vacater? I don't believe so. So, let me first clarify, I believe, the position of the government and then explain why we think that's different. The government's position does continue to be that Section 706 does not authorize universal vacater. I will certainly acknowledge that this Court has held otherwise. And, indeed, I believe Chief Justice Roberts famously said that you do these things multiple times before breakfast each morning. And so, I will certainly acknowledge that argument is off the table in this Court in this posture. But that is nonetheless that position. I believe it has been accepted by one circuit. It's not, you know, it's certainly a position that we think is well-supported and may, you know, for present purposes, you know, is highly theoretical for this panel. So, we acknowledge that this Court's precedence provides 706, what applies universally. Why, you know, why is 705 different? I think there's several reasons. One, the text of 705 is profoundly different than 706. 706 says, shall set aside. Section 705 says, just may, and it refers to traditional equitable principles in terms of preventing irreparable harm and preserving the status quo. And the Supreme Court has a very long line of very robust precedence that make clear that departures from traditional principles of equity are extremely difficult to establish and are only done in the, you know, where there's the clearest possible language. That's in the Heck case. That's in the eBay case. That's in the Weinberger case, the Starbucks case. They've said that many, many times. And so, because Section 705 doesn't just not clearly provide an exception to traditional equitable principles, but seems to expressly incorporate them, then we think that applies. And notably, outside of the administrative context, that is exactly the rule that, you know, if you have... If that's right, does that mean that the stay of the Clean Power Plan was inappropriate? The interim relief where the Supreme Court reversed our court and stayed the Clean Power Plan, leading eventually to a final judgment in West Virginia, the Supreme Court was wrong to issue a stay for the Clean Power Plan? I'm not prepared to specifically speak to the facts of it, and CASA does acknowledge that there will be some times where, in order to provide complete relief, the scope of the In order to provide complete relief to the named plaintiffs, it may have to be that sort of broad relief, but you can't just simply do so without, you know, going beyond with complete relief to the parties. So, I'm not prepared to speak to the specific circumstances there. I mean, obviously, the Supreme Court doesn't, you know, decide issues that it doesn't talk about. And so, I can't specifically speak to that, but maybe. Ms. Ransom, can I ask? I take your textual arguments that 705 specifically refers to pretty much all of the traditional equitable principles, and 706 makes no mention of them. Do you, does the government have any arguments, however, about the history of the APA or why 705 and 706 might have been written in those different ways? I think it's very hard to kind of divorce those two provisions from each other. And so, I'm wondering if there's, like, some further historical evidence. Not specifically that I'm aware of, but I think historical practice could be pretty instructive here. In particular, Section 705 stays basically didn't exist as a commonly sought remedy until about five years ago. There is very stamped case law on it, and, you know, it is a very late discovery if it provides the same sort of, you know, blanket relief in an interim posture. I mean, essentially, you would have administrative lawyers, I believe, committing like— Isn't that in part because normally you could just get an injunction? You wouldn't need 705. Part of the problem is, I reread this one thing I think everyone agrees on, is it doesn't allow injunctions. So, in an ordinary agency case, you could just get an injunction, or maybe. I mean, you know. You potentially could, but it's well established those injunctions are subject to the narrow tailoring principles. And so, if it was the case that Section 705 was always available that whole time to get universal relief, you have essentially administrative law lawyers committing, like, eight decades of malpractice failing to, you know, seek the much easier remedy. And so, the fact that they weren't doing so and weren't—didn't understand it to be so, I do think is instructive on what, you know, was intended. So, do we have to have the same rule for 705 and 706? I mean, the government's position is that, yes, we do. You can't get universal relief in 705, and you can't get universal relief in 706. That may be an exceptional circumstances where it's shown that universal relief is required. So, I don't think— We're also asking us to split the way we think about those under our current precedent, which is, you know, obviously, we can't revisit our precedent suggesting that universal vacuum is available under 706, but we could treat 705 differently. You certainly could, Your Honor. And just to clarify, our position is not that 705 has to incorporate CASA because 706 does. It is both of them incorporate CASA, but 705 absolutely can independently incorporate traditional equitable principles in a way that Section 706 might not. And that flows quite readily from the profoundly different text of those two provisions, where one says, shall set aside, and the other says, you may preserve the status quo to prevent irreparable harm. Those are, you know, radically different texts. It should not be surprising that might lead to different outcomes for the two different provisions. That's not the government's sort of top-line position. The top-line position is that these traditional equitable principles are in both 705 and 706. That is our position, but not specifically—but our position on 705—our front-line position on 705 is not a derivative argument based on 706. It's based on the text of 705 itself. I just want to understand something based on these exchanges. So the government is not contending that 1252 F-1 categorically divests a district court from entering a stay under 705 aided by 1252 E-3A? 1252 F-1 certainly does not preclude a court from ordering relief as to named alien plaintiffs. As to such plaintiffs, 1252 F-1 is not a restriction on remedies whatsoever and would not preclude jurisdiction. On top of that, this court recognized in Make the Road 1 that the 1252 F-1 does not bar declaratory relief. And so 1252 F-1, at least where you have named plaintiffs, is not going to be a barrier to having a case or controversy. But it certainly is an absolute prohibition on awarding relief that enjoins a restraint as to any non-named alien plaintiff. And we think that absolutely is the case here. The Supreme Court is—go ahead, Joe. So if I look at the language of the order that's at JA-1, and let's suppose that, just for the sake of this hypothetical, that we think that the court had it right, but the scope, we agree with you on the scope, then what the order should say is that these are stayed with respect to the plaintiffs. And just make that explicit instead of just saying stayed without any reference to these plaintiffs. Is that what you're saying a correct order should do? I don't believe so, Your Honor. If I'm understanding the question correctly, that would be a stay as to the parties, but the relief would still be in places to non-parties. If that would be the case, I mean, I think that would violate all sorts of principles of Article III, and it would be providing advisory opinions to parties not before the court. Well, I'm just trying to—maybe I—I'm sure I didn't ask the question very well. I guess all I'm saying is if you had a meritorious case where a court was authorized to stay a regulation, are you saying that the way that the order should be drafted, it should say this regulation or this policy is stayed with respect to any proceeding involving the named plaintiffs? That's the way you say that the order should be written? I'm just trying to understand your position. Understood, Your Honor, and it's a bit of a wrinkle here. If you had a situation where there was both an organization and named plaintiffs, and the district court had stayed—granted a stay to all of them, then the right remedy would say that it should be reversed as to the non-named plaintiffs, so the organizations, but allowed to stay in place as to named alien plaintiffs. If that were the only issue, that's what the order should be. There's a wrinkle here in that while plaintiffs here are both organizations and individuals, the Section 705 stay here was sought only on behalf of the organization and not on behalf of any individuals. In fact, the individuals expressly disavowed seeking a 705 stay themselves. So, in this posture, the only relief granted that's up on appeal is by 1252-F1. I guess I'm not understanding that because it's—why is it the case that if relief is too broad, the only thing that we can do is to set it aside completely as opposed to narrowing it to whatever the statute and the Constitution says it should be narrowed to? Your Honor, I agree with that principle. I just think here, when you narrow it to its proper scope, there is no proper scope. So, it needs to be reversed in its entirety. There's no one—there's no relief that was granted here that doesn't violate 1252-F1, and that's why not wide reversal is required. If there were relief that were granted to individual alien plaintiffs, and that had been part of the district court's order, then that properly—then the decision shouldn't—if 1252-F1 were your only issue, you should leave that in place. That's just not the posture in which this appeal arises. Out of curiosity, in a different case where there were individual alien plaintiffs seeking the interim stay, and the order read, the relief provided is a stay. The court provides relief just to the named individuals. How would the effect of that be any different than the effect here? I think it's the universal scope that's different. I mean, if that were the case, it would only apply to a very small number of people, but instead it applies to the entire universe of aliens that might enter the United States. So if a court stays a rule, that the government can continue treating that rule as if it hasn't been stayed with regard to everyone who wasn't a plaintiff? I think when a court orders party-specific relief, that is how it in fact operates in the government. It's true for an injunction, but an injunction runs to an individual person. You, John Doe, cannot do something, or you, John Doe, must do something. But a stay runs less to an individual person, and it runs more to a decision that has been made, either an adjudication or a rulemaking. And once a decision has been stayed or vacated, it's as if it doesn't exist. It's as if the decision hadn't happened. And once we're in a world where a court has ordered that a decision has not happened, how can the government continue to act as if that decision has happened? I think, first of all, even as a Section 706, I think partial vacators have sometimes been ordered. It is not necessarily the case that the court has always done maximalist relief, even within 706. But, you know, as to Section 705, Congress clearly intended to apply traditional applicable principles, of which party-specific relief is a bedrock requirement of centuries of Anglo-American law. But you, I'm not sure I agree, not sure I disagree, but for 706 final judgment vacator, not partial vacator, but just vacator, you would then concede that even though the judgment was obtained only by individual named plaintiffs, that the government cannot continue to treat as if it exists the government decision that has been vacated. I don't believe, it would certainly depend on the language, but if a district court expressly entered party-specific relief, I think the government would certainly be, and made the vacator party-specific, I think the government would certainly be within its rights to treat that party-specific relief as party-specific relief. Have you ever, can you name us an instance where that has ever happened, where this court or any court has said in the vacator context, you know, ABC company prevails on their APA claim, and this rule is set aside, but it's only set aside with respect to them, to ABC Corporation, the agency can still enforce the rule against everybody else? Not specifically. So again, this would be within the context of section 706, but 706, even within that context, this court, you know, obviously has its remand without vacator standard. It has also issued vacators that are less than complete in relief. It often is time-limited, you know, or sometimes limited in scope. There's nothing conceptually different from a vacator limited in scope as to parties or as to aspects of the rule. It's less than complete vacator. I can't thank you. If you can't tell us an instance where that has ever happened under 706, why should we believe that that's the proper way to proceed, or that would be the proper interpretation of party-specific relief under 705? Because the vacature or stay is, I mean, the stay doesn't have a different characteristic under 705 than it does under 706, other than whether it's temporary or permanent. Your Honor, we simply disagree. The texts of section 705 and 706 are profoundly different. 706 says, shall set aside. 705 says, you may issue a stay, and then it expressly incorporates traditional equitable principles. And those traditional equitable principles— I understand may and shall, but that begs the question of whether a stay under one means something different than a stay under the other. I agree that it raises that question. And our answer to that is that 705 has a—you know, it has very different text and must incorporate—you know, does incorporate traditional equitable principles, including the CASA principle and including the ordinary requirement that relief is generally party-specific. And notably, you know, it's well-recognized—I believe the Supreme Court said in the Weinberger case that the essence of equity is flexibility to mold a decree. And an absolute requirement that relief must always be maximalist is antithetical to those equitable principles that section 705 is going out of its way to incorporate in multiple instances, which should be enough on its own. But then you have an overlay of that, of the Supreme Court has said in multiple cases, like eBay and Weinberger and HECS, that you need exceptionally clear language to depart from traditional equitable principles, and you can't find anything in the sort in section 705. So let's suppose I—the Court agrees with your conceptualization of it. So you have a case where the stay under 705 is entered, and it says that this policy is with respect to these named plaintiffs because we find that the policy violates the Constitution. So that's what this court order says, and that is affirmed by our court. Isn't the effect of that practically going to be that from that moment forward, when the government attempts to implement that policy against anyone else, they will argue that the policy is unconstitutional and the government will be collaterally stopped from really prevailing otherwise? And so the effect of it is going to be that that policy is stayed as to anyone or at least anyone who makes the argument? So the answer to that is a bit complicated, and it really depends on the posture. So certainly to the extent that a district court issues party-specific relief, the government is bound by that and must abide by its terms as to the parties. As to non-parties, certainly in the district court, there is not otherwise binding effect. To the extent that this court would decide something in a binding published opinion, then it becomes a bit messier. Sometimes the government will take a non-acquiescence posture in other circuits. Certainly to the extent that the Supreme Court decides the legal issue on the merits, at that point, the scope of relief is essentially something of a moot point, because then the answer is what it is, and that's the law of the land from the highest court. To the extent that this court would do something in this circuit, the government very typically follows that, but it might take a different position in other circuits that might have different results. For example, if there's an adverse... But doesn't this provision channel all actions to the U.S. District Court for D.C.? So why wouldn't then all subsequent actions be essentially controlled by this first order? Certainly all programmatic challenges that could be brought, and so it gets a bit messy. So that channels programmatic challenges, but doesn't necessarily channel individual as applied challenges. So it's conceivable that it might arise in a different circuit in a way that would present something different. And so, for example, if the government gets an adverse Social Security disability decision in the Second Circuit, it might take a different... It would continue to apply what it believes is the correct legal principle in the Ninth Circuit. And so there are quite a number of actual permutations. So I guess the bedrock principles are, you know, obviously the government must follow party-specific relief as to the parties. Where a court issues a binding decision that may practically have the same effect or a similar effect as broad relief, but that is not invariably the case. Are you aware of any individual challenges, you know, for individual removal proceedings raising these due process questions? Is there litigation in other circuits? There is. There have been challenges to expedited removal in the context of the invasion proclamation that I think may have raised similar issues here. Essentially, I think it can come from elsewhere. Notably, there is exceptions for people. There is an exception in 1252E for citizens, lawful permanent residents, for asylees or refugees. So if you have some sort of durable status, you could bring those as challenges elsewhere and it may arise elsewhere. And if you said the procedures were deficient, that could arise in a different federal district court. Can I just also ask, given the government's position that this expanded designation is a very important policy initiative and given some of these arguments about universal relief, I'm just, the government hasn't sought a stay at the Supreme Court after the circuit denied a stay. Is that correct? Yes, Your Honor, although actually, you know, and certainly I was going to close the argument by renewing our request for a stay pending appeal here. Now that you have the benefit of full briefing and oral arguments, we would respectfully renew our request for a stay pending appeal as this case may certainly, you know, take some time to resolve. Certainly, you know, and this court's answer might not be the final answer to it. So we would renew that request. Certainly, you know, this court took quite a bit of time to decide the stay pending appeal and we did not go to the Supreme Court during that time that it was pending. You know, we had, and then when the stay decision was finally came down, it came down very close to the date of oral argument, which is why I'm renewing the request to you now instead of perhaps why we went to the Supreme Court in a posture where we didn't yet have an answer. I mean, technically speaking, I think our request for even an administrative stay remained pending for over two months. All right. Yeah, thank you. All right. We'll give you some time on rebuttal. Thank you. Thank you, Your Honors. Mr. Balakrishnan. Yes, that's right. Good morning, Your Honors. May it please the court. Anand Balakrishnan for the appellee in this matter. I just want to start with sort of a quick factual clarification about something that I think might have confused the court and then maybe proceed to sort of some of the due process notice issues after that. I think the first thing is I think Judge Wilkins and I think the stay panel had mistakenly believed that the individual plaintiffs, Mary and John, who were apprehended in Texas and put into removal and removed after 10 years, they are not members of the organization Make the Road, and we've never identified them as such. And so I just want to, for the record, clarify that and also just point you to the correct record sites. You know, I think that for the membership records of the organization Make the Road, you'd look at the Fontaine Declaration, which is the Joint Appendix 158 through 159, lists six individual does who are members of Make the Road, and those are the individuals whose standing Make the Road is predicated on and this same motion as well. So I just wanted to make that clear up front so there's no confusion. I think that I'd like to next turn, Sister McCormick, I think Your Honor started questioning, which is on this issue of notice. You know, of course, we agree with, you know, that the notice is inadequate. I think I just want to be clear that there is sort of additional problems even beyond just sort of like the lack of notice. I know that Judge Walker had questions as to why, you know, comparing it to, for example, an affirmative defense in a murder case, for example, but I think that the key difference here is the speed of the process, right? This is not, this is a process which, and, you know, this is in the record and, you know, congressional studies have been done of this. This is a process that can occur in hours, less than a day, in which someone is picked up by an immigration officer, given a single sheet of paper, detained, all of their belongings removed from them during the detention process, not able to contact any third person, let alone a lawyer, and then removed from the country. So this is, you know, this is a place where notice is absolutely essential, particularly of such a... MARY JO GIOVACCHINI Isn't this process inconsistent with the ICE guidance that was just made public? JUDGE WALKER I'm sorry. MARY JO GIOVACCHINI Isn't what you've just described inconsistent with the ICE guidance that was provided, which suggests that there's a reasonable amount of time to contact a third party, to get documents, to show continuous presence? JUDGE WALKER Right. I mean, there is a statement in there that they, you know, will be given, but it's entirely in the discretion of the individual ICE officer. And so this is a place where a single agent gives them a piece of paper. It says you have some period of time. That person has been detained, shipped off anywhere in the country. I don't have any clue how this process is supposed to work in practice, particularly when the only check on it is that individual officer who's supposedly in their discretion, providing them with time. That person, you know, and this is, again, it's in the numerous declarations and reports that that person, are they going to be able to contact people when they contact that person? How is that person supposed to get documents to which ICE agent? Nothing about this is set out in this. This is, I mean, it's basically impossible. JUDGE WALKER Let me describe the situation. My question is going to be, is there evidence in the record that this has happened? I don't know the situation yet, so let me describe it. So someone's picked up, is told you're being subjected to expedited removal. That person says, I've been here longer than two years. The government says, I'm not going to give you a brief but reasonable opportunity to show that. And that person is removed. Your Honor, I would have to, I don't want to answer that right now just because the record's quite large, so I don't know whether there is anything that meets that specific example. I will say that my recollection of the record, I think the following examples are certainly in there. So with the individual plaintiffs, you know, not parties of the state motion, but their declarations in there, they provided evidence. They actually provided evidence to the immigration officer, right, because they were visa overstays they weren't, they didn't enter without inspection. So they had some documentation which said that they overstayed the visa. It showed, they said that they had been here for, I think, around 10 years. All of that was written down on the ICE form and then they were deported. So this is a situation, you know, it's like one of these things where there might be examples, I don't know. But that may be an example of a perfectly fair process that led to an erroneous decision, an erroneous interdication. But it doesn't sound like there's any evidence in the record of the denial of a brief but reasonable opportunity to show you've been in the country longer than two years. I can't say that there is at this moment. I'll check and if, you know, if there is some... Again, here's a friendlier question, I think. The government was not able to confirm, hopefully they will in reply, but they were not able to confirm that an alien in the situations that matter here are told you are being subjected to expedited removal. Do you know if they're being told that? I don't know. I was looking at the record to see. So I also can't say. I would need to check again and would be happy to sort of submit, like, something on both of these questions.  I mean, it might be your burden, it'd be convenient if they can show something helpful to them, but it might be your burden to show, as the party with the burden of proof here, that the process does not include a statement written or verbal to the alien you were being subjected to expedited removal. That may matter to me if you can prove that. I understand your question and your request. I would just... And I think this goes back to what I was saying before your questions, which is even on that, though, I don't think even that would be sufficient in this context, right? Because, you know, it's certainly better than, like, a bare statutory citation to use the word expedited removal. But when we're talking about sort of, like, the continuous presence line, which is people who have been here over two years, because of the expansion of expedited removal, that includes everyone in the United States, right? And includes people who have been here for maybe three years, maybe 20 years, maybe 50 years. You know, we're going to people who have been here for a long time, U.S. citizen families, you know, lots of connections. And at that point, I think that... I don't know any... I don't think it's reasonable to think that anyone, even just sort of being told it's expedited removal as opposed to normal removal, would be sufficient to inform anyone that they're not subject to it if they've been here for over two years. And I don't think, you know, this is sort of part of the Matthews balancing test, I think, which is what's, you know, I think it's common sense, of course, that having really just even that bare amount of information, you know, if you've been here for over two years, you're not subject to expedited removal, would certainly decrease the risk of error. And I'm not sure how it would be overly burdensome to the government to do that. So here's kind of how I'm thinking through this part of the case. Congress has made a policy choice. You will be expeditiously... If you're here illegally, you'll be expeditiously removed unless you've been here longer than two years. So, for someone who has chosen to be here illegally, in violation of our laws, due process does not... It's not... From a due process perspective, it's not too much to ask that if someone's here illegally, once the special, non-expedited removal procedures that Congress has graciously afforded them, it's not too much to ask that they ask for them. I understand. And I think that might go back. It seems like underlying your question is a little bit the nature of the due process, right, and when it is triggered. And there, you know, I mean, this is all in our bracing, of course, this previous decision. In this case, like, I think it's clear under Supreme Court precedent that, you know, the line physical entry, you know, we think, of course, it's met once you've reached the Rossingum Line or the Yamataya Line, you know, 100 yards, five days, whatever, what have you. We're talking about over 14 years. But I think that there's nothing to indicate that there's any exception would extend so far as to over two years in the country. And I think that at that point, what we're talking about is, you know, it's, you know, what we're talking about is creating minimal sufficient procedures to protect people who have clear due process rights under United States Supreme Court case law from being erroneously placed as expedited removal. I mean, part of that depends on how to read Thurgassium, yeah, say again. I mean, I'm probably mispronouncing it. I'm going to try, Thurgassium. And I did take, I took a look at the respondent's brief in that case, which, you know, because you were on the respondent's brief, and it warns, you know, if we lose this case, says the government submission is that the court should radically rewrite constitutional doctrine and expand the interdiction to eliminate procedural due process rights, not just for those stopped at the port of entry, but for any non-citizen deemed to have entered the country unlawfully. It seems like you warned that if you lost the case, all of your now clients would have no due process rights. But now the government says they don't have due process rights. But that's not what the, I think this might be an instance where we were wrong, but less flippantly, you know, I think that Thurgassium, of course, you know, if the line were one of admission, Thurgassium would not have had to go through the due process analysis that it did to establish that Mr. Thurgassium was on the threshold of entry. It would have simply, I mean, the opinion would have been a lot shorter. It would have said he was never admitted, we're done. So I don't think that, you know, and we can also look, and we've already talked about this, you know, in AARP, of course, the Supreme Court there, its language was universal. It was just repeating. I think there's strength to your argument, both your reliance on AARP and your point about what the Supreme Court actually said in Thurgassium. So let's assume that your clients do have some due process rights. The government makes an argument that there's no such thing as process just for the sake of process. And I think all of your clients, as you've kind of defined them, all the members of Make the Road, are here illegally. So whether they get kind of expedited removal or non-expedited removal, the proper result is removal, right? I don't know whether, I think maybe I'm, I don't know whether the proper result is removal. I mean, the proper result would be sort of procedures to the relief that Congress would have afforded them. So that might range from, you know, examples like asylum, withholding of removal. But, you know, as you go further, sort of like outside of the zone of the border, there's more and more forms of relief that people may be entitled to under law that expedited removal cuts you off from. Would you agree? I think I did probably phrase the question too broadly, but would you agree that for someone who is here illegally, no asylum claim, they're not citizens, they don't have a visa, they're not permanent residents, et cetera, et cetera, that for someone who's not here illegally, that whether they go through one stage of adjudication or whether they go through 14 steps of adjudication, that if they're not here legally, one step or 14 steps later, they can be removed? I think if your question is about sort of like, if we assume the following, someone has sort of entered, you know, across the border in an undocumented fashion, like there's two different processes, one shorter or longer or something, and they don't have a sort of valid form of relief, the end of it results in their removal. I think in most cases, yes. I mean, the one- In most cases, yes, what? Yes, they would be, like if they have no claim for removals. But I think that, you know, but I feel like that's sort of flipping the due process question on its head, because they're sort of assuming there is no relief for people. But I think it's clear, you know, people do have forms of relief that Congress has made available to them that people will be entitled to, even those at the border, at a port of entry, have the ability to claim various forms of humanitarian protection from removal. Right, then that gets into the credible fear question and the asylum question. And I realize that you're litigating that. That's an open question for this panel. The emergency panel was unanimous in not thinking that there was a problem, right? And I'm ruling for you on that question. So if you put the asylum credible fear question aside, and you're just talking about the group of people who have been here longer than two years, or who have not been here two years yet, but who will be by the time they're picked up, and we're talking about those people who don't have an asylum claim, it's almost like you've taken a class of, imagine a class of, imagine a due process claim that says the government is taking away my property without enough process. And the statute says they're entitled to 14 steps of adjudications before the government takes away their property, if it's really not their property. And then you come to the court with a class of people who are property thieves. And you say that we're entitled to 14 steps before the government takes away our property. One step or 14 steps, they're still not entitled to the property. Yeah, I understand. But I think that here, I guess, maybe I'm not meeting the question, but I think here people do have forms of relief available to them. Like those who have been over for here over two years, you know, they might have withholding claims. They might have cancellation claims, adjustment claims, various forms of visas, like, you know, connections to U.S. citizens that could open up different forms of relief. And some of those forms of relief are not cognizable at all in expedited or mobile, which, of course, just focuses on the forms of protection. So that's one problem. And I think the other is, if you start with the understanding that people may have forms of relief, some members of this large group that it now applies to, which is everyone in the country, may have forms of relief. You know, the only way you know you have a form of relief is when you're put into removal proceedings. You consult a lawyer. You're able to raise claims as a defensive matter. The only way the government knows there's a form of relief is when it's presented to the immigration judge. All of those turn on the fairness of the procedures themselves. You know, and that's what I think is the plaintiff. It was your burden to show for those people who undoubtedly exist that they're not getting the procedure to vindicate their right to stay or their right to not be removed to particular countries. And if they're citizens, they get the habeas after the emergence, after the expedited removal. If they have the asylum claim, they can raise that in a habeas petition. And they also, as the government says, are getting incredible fear to question. You debate whether that's enough. If they're permanent residents, I think that there's some statute I've found, not statute, regulation HCFR 23.5.3B5, and it says they can challenge other lawful grounds like whether they're a permanent resident. So I get that there are people out there who have a right to stay here. It seems like you haven't shown that for them, the procedures are insufficient. I understand what you're saying. And, you know, I think that, you know, this is, of course, preliminary stage of the case. We can always provide more evidence below about this. We think that the notice problem is a glaring enough problem in this case. This is a per se matter that the stay for that purpose should stay in place. But I understand entirely what you're saying about sort of the need to show the error. I will just say that, you know, one of the things, and this sort of goes back to sort of the uniquenesses of the 1252E3 process, is that because there is this 60-day deadline, you're forced to bring pre-enforcement claims, right? So because after the 60 days, you might be out of luck. So and this sort of happened the last time that we had litigated this in 2019 as well. You end up in a position where you have this massive expansion hasn't been in place for that long. So a lot of the facts are necessarily have to be, first of all, of course, it's a facial challenge under the statute. Second of all, it's necessarily sort of a little bit relies on inferences from errors made in the past. Because because expedited removal was limited to the border, you're not going to see the same types of errors as when it's expanded into the interior this far. So while I take Your Honor's point about the need for us to sort of demonstrate that, I do think sort of like in practice, we are going to sort of have to rely, as we did in the record in the district court on sort of the past errors that have occurred over the past 20 years. And there's necessarily a certain amount of extrapolation, which might not be involved in others. Just a question. I mean, isn't that precisely the type of release that IRERA forecloses? This sort of categorical, class-wide, injunctive relief against a particular written policy? I think it's interesting the way you characterize your claim, because it seems to me that that is exactly what Congress contemplated as the type of relief that courts cannot afford in this context. But I mean, the reason I phrased it that way was because that's the language of 1252E3, which is systemic challenges to the validity. I'm going to mangle it, but whatever. It challenges the validity of the system. So, you know, it's looking for systemic relief. It targets writing sort of very similar to sort of like an APA process where you target the writing itself and the policy. And so it is, I think Congress, you know, whatever Congress said in 1252F1 needs to be understood in the sort of context of 1252E3 here. And here Congress specifically guaranteed, you know, a form of judicial review over new writings as a whole. A form of judicial review, but not injunctions or restraints. Yes, I understand. I mean, that goes to the sort of the question of, you know, the nature of the relief, of course, which, you know, I think we've spoken about before. I mean, her position is that, of course, you know, it's a formalistic, you know, position, right, which is that enjoin, restrain, formally distinct from injunctions, restraining orders because of the in personam effect, et cetera. And Your Honor knows this already. All right. But so how do you get to a 705 stay in this case? I mean, where the district court has explicitly said, I'm not deciding an APA claim. So there is no APA claim. How do you get an APA stay? I think I understand your judge's question, especially from the last college we had on this. And so, and from your writing in the dissent. So I think... Why am I wrong in my status? I think that, you know, I, after looking at the case law, I think that it does need to sort of like as under the, using the APA as a cause of action to get the unique remedy of the APA itself. You know, here we did sort of specifically request, I don't think this is a pleading problem. You know, I think it was clear where... I don't think it's a pleading problem. I think it's a remedial problem for what the district court did, because if you, if she decided an APA claim, then you might be smack up against Make the Road One. Right. And so she says, I'm not deciding an APA claim. And so to me, the only option is she decided an equitable constitutional claim, but then she can't impose an injunction because of F-1. So then you have to have an APA stay. It just seems like there are landmines whichever way you go, and I'm not sure what's the best way. Like, what do you think is the best way to avoid the landmines of the APA and IRERA to get the relief that you're trying to get? Yes, I understand. Yeah, so I think it can be construed as an APA claim seeking APA relief. I think there, if I understand the logic correctly, there we run into sort of, I think you identified sort of perhaps a problem with it's committed to agency discretion by law. But I think there, I think, you know, I think the Supreme Court in Lincoln v. Vigil, I think it is, you know, says, and I just pulled the language so I made sure I wouldn't misquote it, it's 508 U.S. 182, 195. It says the APA contemplates in the absence of a clear expression of contrary congressional intent that judicial review will be available for colorable constitutional claims. So that's sort of like the language that I was looking at, and it seems to support the idea that, and in Lincoln, you know, the agency action there was found to be committed to agency discretion by law, and yet they still said that about constitutional claims on remit. And that was the APA, was it an APA constitutional claim or was it? I tried to check that, and I wasn't sure about that, so I do want to be clear. I agree. If it weren't sort of about, but I was just looking at the language itself. So I can't say that it's clear that it's about the APA, but I do think that it would be, you know, the way that 701A2 is also written, because it says that, you know, it says whatever this chapter shall not apply except to the extent that agency action is committed to agency discretion by law. And I think that the sort of to the extent language is important as well as sort of this background principle that you can't, you know, unconstitutional agency action is not a matter of discretion. And so you end up with this question, sort of like this background question of, you know, can law commit unconstitutional acts to agency discretion? But you're not suggesting that designating up to the extent of the statute is unconstitutional. We are. And that's, I mean, that's, I think, clear from... So there are no procedures under which you could actually... I think under the... Designation itself, we are going to apply expedited removal to the full extent of the statute. You're not challenging that unconstitutional. We're challenging it in the absence of constitutionally adequate procedures. And the reason for that is because, you know, under E3, you're guaranteed review over your writings, whatever, and you know that. The question here is sort of like, of course, the designation itself is not on its face to specify procedures, but by intent and by force, it brings the rest of the procedures against this new group of people. And in any case, the question is, does this... Can this writing be used? Does it facially... Can it facially be used in the absence... To put people in expedited removal in the absence of procedures? For those procedures, of course, you look to see what's in the designation. You look to see what existed before then. You're not challenging those other documents. You're challenging the designation itself.  So, I mean, if we assume, as this panel must, that Make the Rule 1 is correct, and that designation decisions are committed to agency discretion by law, then there is no APA cause of action for designation decisions. But even if that's not true, even if you want to suggest there's some kind of constitutional carve-out, the district court here explicitly said it was not deciding an APA claim. What do we do with that? I mean, I would think that the... And again, this... I don't have a case for this, so this is just Gabe pausing it. I mean, it would seem like it's sort of a good review at de novo and determine whether there is an APA cause of action. I don't see why, if this court decided that... You know, assuming the court decides that there is APA review of this kind of constitutional claim we're bringing, I don't see how it sort of changes the analysis of the district court, given that, you know, the stay from the APA. So it feels like the court could do a de novo in this first instance. I'm trying to understand your answers and kind of the way that you fled this case. So your complaint, you say that the court has jurisdiction under... You're saying that to the district court as jurisdiction under 1252 E3. So you are citing it as if it is a jurisdiction conferring statute. And then you say the district court also has jurisdiction under 1331. And then in your claims for relief, and I'm looking at the... Let's say the second one, JA 383. You say there's a violation of the Immigration and Nationality Act, and that's 1182 A7, the APA 7062, and then you also cite 1252 E3. So my first question is, what do you think 1252 E3 is? Does it create a cause of action or a claim for relief? Does it confer jurisdiction? Does it do neither? Does it do both? What do you believe this statute does? I understand. I think at the least, it provides jurisdiction. I think that's clear from sort of previous cases in this court. I think as to the question of the cause of action, here, I think we did think we were proceeding sort of, I think, evidence of the district court's decision to the contrary. We did sort of think we were proceeding under the APA for the formal relief. So I don't know, and we haven't briefed, whether E3 also provides sort of like a separate cause of action in this case. But I understand the question. I just don't really...  So then my next question is, so your first claim for relief in the complaint is a violation of the Due Process Clause under the Fifth Amendment. Correct. And so what is your authority for, if the court finds a likelihood of success on the merits on that claim, that it can enter a stay pursuant to 705? So I think, and I don't know whether we cite any cases, but, you know, the APA, like putting aside the serious issues that Judge Rao has identified, the APA does provide for review over claims that agency actions are contrary to the Constitution. So it would proceed under the APA as a cause of action with the 705 stay issuing as a result. I think that maybe, and you should correct me if I'm wrong, that your question goes to the 1252-F issue in this case, whether 705 stays are available or not, or... It goes to that, but I guess what I'm trying to get to, and I think it's the same point that Judge Rao was getting at, I don't want to put words in her mouth, but, and I guess maybe I'm just too nerdy and technical, but I like to understand what basis there is for any cause of action, if I were a district court judge, which I was at one point, what is the basis of this cause of action? Is it a common law? Is it a statute? What is it? And then how do I know, where do I look to, to know what relief I can grant, whether it's damages or injunctive relief or a stay, whatever it is. And I guess with respect to this due process challenge, which is claim one, your first claim, your complaint, what is the basis of that cause of action? 1331 or 1252-E3 might say there's subject matter jurisdiction in the U.S. District Court for the District of Columbia to bring that claim. But what, what is the, what is the source of that, of the, of the cause of action? Right. So I, standing here, the way I understand it is that E3, the way we had framed the stay motion was that, and understood it was that E3 was providing the jurisdiction. The APA was providing the cause, the cause of action and the relief as well in this case. I think, and so maybe that's the short answer, but I don't. And you think that the language in Lincoln v. Vigil that you referred to, the support for the proposition that an APA cause of action can be based on, on, can be the, can be the basis of your due process cause of action. Yes. Even though, as Judge Rao pointed out in the first make the road decision, specifically the claims, the arbitrary and capricious claim there, and I suppose also substantial evidence type claims would be barred where there is, you know, language indicating that and that's sort of our, yeah, our argument here. Can I, I think these are all yes or no questions. Do you have some members who are entitled to be here, whether it's to asylum or whatever? We did not identify, there are, Baker Road has a wide variety of members. We did not sort of specifically identify those who are, for example, there are many citizens, many people who are entitled to already have asylum. There were those we identified who are in the process of applying for asylum. That makes sense. So for the members who are, who you identified and who are applying for asylum, is there a declaration from them saying we are entitled to asylum? I'd have to look back as to exactly what they did. There's two member declarations that were submitted to the district court. I can't remember off the top of my head the specifics in that. What do you think our court should do if it turns out you have no declarations from members who are entitled to be here? I think I'm, so there's, by entitled to be here, do you mean entitled to apply for the legally provided process or already granted relief? I guess neither. I guess members who the government cannot remove. Okay, so we can, we don't have any specific declarations from members who say I have been granted relief so I cannot be deported. We also don't have declarations from their many members who are citizens or non-citizens who are green card holders, what have you. We could, I don't know whether that changes the analysis, but we can of course provide those declarations if it's necessary. I don't know. I mean, I don't know if it's necessary to my colleagues and I'm not sure at this point whether it would, whether we should be making a decision based on new things added to the record. Right. But fair enough, I think I understand your answer to that. And then have you identified a single alien who has ever been removed as a result of the purportedly deficient procedures and who was entitled to stay in the country? Yes. So this is, I think here again I would, I believe that in the sort of reports that we've submitted there are examples, for example, citizens have been erroneously removed through expedited removal. But no declarations of them? I believe that we might have declarations. We also have declarations sort of from lawyers who have, who had clients. And the citizens you're describing who were removed, they were, they were removed as a result of the purportedly deficient procedures? I mean, yes. Like, yes, they would have had to be because, I mean, citizens shouldn't be removed under expedited removal, should be excluded from it. I guess though that like, it wouldn't be a deficient procedure if the government said, we are doing expedited removal for you. The person said, I'm a citizen. The government said, I'll give you every opportunity to show you're a citizen. They provide a passport and a birth certificate showing they're a citizen. And then the government erroneously and unlawfully removes them. That would be an egregious and unlawful removal decision. But it wouldn't, that person would not have been denied the proper procedures leading up to that decision. Do you have anyone like that? I can't recall off the top of my head exactly the specifics of what happened in the cases. Can I ask you also about Make the Road 705 arguments? So there seemed to be in the briefing before us, leading into the idea that what the district court did is postpone the effective date of this. Just wondering how that's possible since these designation decisions take effect immediately and you can't postpone an effective date after an effective date has passed. So I'm just wondering why, I mean, it's just completely frivolous argument. Well, I think that there's multiple district courts in this district that have entered 705 stays or postponements after. There's a difference between a stay and postponing the effective date. Postponing the effective date, how can you, just by the plain meaning of those words, how can you postpone a date that has already passed? Right. It doesn't, and I don't have the statute in front of me, unfortunately, but I believe there's also sort of other language in there of like taking any other such process necessary. That's part of the stay language. But I take Make the Road's argument. So, I mean, I guess this is relevant to the idea of whether it's possible to issue universal relief. And I take Make the Road as arguing that because you can postpone the effective date as to everyone, that's what happened here and that justifies universal relief. That's correct. But I don't understand how you can postpone the effective date of something where the date has passed. Right. But doesn't the same, whether it's postponement or whether it's a stay, in either case, it's operating against the agency writing itself. So, I think that's sort of the formal answer to the question, which is that... Well, it seems that Make the Road believes there's some distinction between postponing the effective date and what is effectively a stay with respect to universal relief. Okay. I understand the question now. So, I don't know whether because I think the real question is whether sort of how 705 operates as a whole. And I think here it's indicating that the form of relief specifically authorized by 705, no matter what we call it, is acting against the agency action in the same manner as vacator does, sort of against the document. Okay. Okay. Okay. So, then I'll just put aside the postpone the effective date, which I don't see how that could even apply in this context. But then why do the traditional equitable factors not apply under 705, which specifically incorporates almost all the words that we govern traditional equity practice, right? It has to be, you know, it can on such conditions as may be required and to the extent necessary to prevent irreparable injury, right? And may issue all necessary and appropriate process. So, I mean, all of those terms, right? Necessary and appropriate. It has to be irreparable on such conditions as may be required. I mean, these are all words that explicitly incorporate traditional equitable principles. And so, if that's true, and I'm not sure I could argue against that, but I mean, those words all invoke traditional equity practice. Then why do the principles of CASA not apply? I understand. I mean, I think there the question is, you know, you can read that same language to sort of refer to sort of those tools, whether in equity or not, that look to the propriety of preliminary release in a case. So, you know, of course, and this is possibly the reason that district courts have used sort of the traditional winters test in adjudicating these, which is, of course, you know, the difference between sort of a 706 speculator and sort of 705 preliminary stays or postponement is that, you know, you're making a decision before, you know, the full judicial process is completed. And so, there is necessarily a certain amount of, you know, prognostication about the likelihood of merits, you know, also, you know, consideration of sort of like the necessity of moving more quickly. But then after CASA, if you're going to award universal relief, universal relief, you have to justify it. But there are traditional equitable principles. But I think this goes back to the formal difference between, you know, the operation of sort of, you know, equitable injunctions, for example, and relief under the EPA, whether 706 and 705, which is that, you know, in one case, they're operating in personam, for example, and the other, they're operating against the document itself, which is a formal matter. I think that's true because in 705, postpone the effective date of an agency action. Maybe postpone the effective date of the agency action operates on the agency action, but you can't get that relief here because the effective date was an immediately effective designation. So, you're under to preserve status or rights pending conclusion of the review proceedings. So, status or rights is not agency action. It is the, you're preserving under 705, the status or rights of the party in the review proceedings. So, so to preserve, that is what the 705 stay is doing in this case. And how does that give you universal relief? Right. I guess there's two, but I think that, so for example, in the Ken, when it's talking about stays there, it's the same, you know, it's a stay as opposed to postponement and it's still operating against in the Ken, the court on the judicial proceeding, it's not a stay of an executive action under 705 of the APA. That's correct. It's a different source of authority, but I think that in the end, I recall correctly, the Ken is not an order of removal. So, it's still sort of an administrative order. That's an individual adjudication. So, it's not universal relief. It's not a universal stay. I don't think the Ken tells you. I correct that. I agree with you that it doesn't sort of like, it's, you know, it's dealing with the individual relief as opposed to sort of like. How do you get universal relief under 705? Postpone status or rights pending conclusion of the review proceeding, which are review proceedings of a particular plaintiff, or I guess in your case, a group of plaintiffs. Right. I think, and I'm afraid I might be repeating myself here, but I think it is, it's because it's a form of relief that operates against the underlying authority, like a stay. Why does it operate against, how are the status or rights? You're entering that to protect status or rights. Of a person. Right, but. In a review proceeding. Yes, but I think that. So, how does that include the agency action? And in fact, it's, I think it's indicative, right, that you can postpone the effective date of an agency action. And by contrast, you can preserve the status or rights pending conclusion of the review proceedings, which, on the one hand, you can postpone agency action, operates maybe against the whole agency action, or at least arguably. But I don't know, I mean, the contrast suggests, no, you preserve status or rights of parties, not agency action. I take your honor's point on this, and there might be the distinction between the two, like, or perhaps forms of authority. I do think that overall, 705 still should be read sort of structurally parallel with 706. But why? Why based on the text or the history, or you've got to give your, every time I give you a specific word, you say, okay, but generally we should get it. I mean, you have to be able to either link to traditional equitable practice to the text of the statute to something in law, presumably. Right. And, you know, other than sort of the, other than what we have in the briefs, and I think also sort of the explanation of it in the stay decision, I'm not sure I have anything to point to, point you to at this moment that would sort of answer fully the questions that you're raising. I'm trying to understand, are you agreeing that postpone, you can't postpone something once that, for purposes of 705, you can't postpone the effective date of something if it's already been implemented? I'm not sure whether that's correct. Are you agreeing with that construct? I'm just trying to understand. No, I'm not, but I think it's partially just out of lack of preparedness for this question. I don't, you know, it seems like you should be able to, but I'm not sure whether exactly, how exactly sort of it's been interpreted in this manner. We have cases saying you can't do that. Okay. I didn't catch that. We do have cases saying that you can't do that. But I guess I would just point to one other thing outside of the APA in this case, which let's assume that, you know, as opposed to postponement, a stay is only party specific. I do think that here you end up with sort of, you should read it in combination with 1252 E3, which is that, you know, E3 is providing, again, for sort of like a single judicial action against any given agency writing. And it makes sense then for the same reasons why a vacator should be available under E3 and why E3 relief should operate against the writing itself. The same should be true in sort of any sort of preliminary stay sort of in an E3 case. So even if sort of a stay under 705 is, you know, incorporating, you know, all equitable principles or party specific relief in the context of a 1252 E3 case, I think, you know, reading it consistent with 706 and sort of full relief against the writing during the interim of the judicial proceeding makes perfect sense. Because the other, you know, no other parties are going to be able to challenge it. There's no other sort of like need for percolation. And I think this, you know, reading the APA consistent with this specific review, provisions that Congress created seems entirely sensible. Any other questions? All right. Thank you. Thank you, Your Honors. Mr. Ensign, we'll give you three minutes for rebuttal. Thank you, Your Honors. I appreciate the indulgence. I just very quick wanted to answer one of Judge Walker's questions. He would ask that if people are given notice that they're in expedited removal, that is at JA355 of the record. The form itself is called notice and order of expedited removal that's provided. It also includes specifically the charges that people are asserted to be removable under. And so we do think that the notice of expedited removal, that they are being placed in expedited removal is provided and that is in the record. And then if I might, four quick points. One, I didn't hear any evidence that a denial of notice or opportunity to present evidence has ever caused anyone injury. So we think that there is a complete absence of Article III standing to bring that aspect of their challenge. And that's essentially the only thing that the state panel, you know, focused on. So I think jurisdiction is lacking there. Second, I didn't hear any denial that how long someone has been continuously present in the country is an affirmative defense. And we've cited to the second circuit case that recognizes that due process doesn't require the notice that an affirmative defense might be available to people. Third, I didn't hear any dispute whatsoever that the rule of thoracity in Nishimura would apply to those who have been lawfully paroled into the country. And no matter how long they've been here, and indeed in the Kaplan case, the alien had been here for more than eight years. And so the only question is, do people who have unlawfully and can clandestinely entered our country, are they entitled to better treatment than those who have been lawfully presented themselves at ports of entry and were paroled into the country? And I think it's both legally incoherent and morally perverse that they would have acquired more rights by illegally entering the country than those who lawfully were paroled into the country. And finally, as Judge Walker was pointing out, there is no constitutional interest in process itself. The Supreme Court held as much in the Olin case. Indeed, and the state panel here was unanimous that the procedures used to adjudicate fear claims are constitutionally sufficient. That is at least the vast majority of all aliens. And I don't believe plaintiffs have specifically pointed to deficiencies that have affected anyone else specifically that they lost a claim they might otherwise have. So there's no standing to seek such relief. You pointed to this JA-355. I just want to confirm, notice the order of explanation, removal of determination of admissibility. They get this, they get to see this before, after they see this, they could, according to the ICE guidance, say to the government, I've been here longer than two years, so I shouldn't be subjected to expedited removal. And then the government would say, we give you a brief, a reasonable opportunity to show that you've been here longer than two years. That's the chronology of how this would work, correct? That's what, that's certainly my understanding. And that's what I believe is both the 2019 and 2025 guidance provided. Thanks for that. But that's not in the record before the district court. It's correct that the 2025 guidance we've asked you to take judicial notice of. The 2019 guidance is not in the district court record. It was cited to this court in the state briefing. I mean, we're not supposed to be finding fact up here. As a general matter, no. But we've explained why taking judicial notice would be appropriate here. And we don't believe that any of the plaintiffs have provided any reason why taking judicial notice would be inappropriate. It is, in fact, the official policy of the United States. There's no dispute as to its authenticity. It is, in fact, official government policy. You know, federal courts take judicial notice of that all the time. You can take judicial notice of a policy. We can't take judicial notice of whether the government follows the policy. That's certainly correct, Your Honor. But I would also then point to, if we're going to go by what there are deficiencies in the record, there's a complete absence of proof that the alleged constitutional deficiencies have ever caused any injury to any actual person. So, if we're going to go by what the absence of the record shows, what the correct outcome here is, plaintiffs lack Article III standing to challenge the relevant procedures, and thus, no relief should have been entered on such claims. All right. Thank you. I appreciate you submitting.
judges: Millett; Wilkins; Rao; Rao; Walker; Childs